UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

THOMAS M. HA,

    Petitioner,

v.

CHRISTINE POPOFF, Superintendent,
Oregon State Correctional Institution,

    Respondent.

Case No. 6:17-cv-00514-AA

OPINION AND ORDER

AIKEN, District Judge:

Petitioner brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner argues that the Oregon Board of Parole and Post-Prison Supervision (the Board) violated his federal constitutional rights to due process when it revoked his parole, refused to reopen his parole revocation hearing, and denied him re-release on parole. Petitioner also contends that the Oregon Court of Appeals violated his rights to due process by declining to review decisions of the Board. For the reasons explained below, the petition is denied.

1    - OPINION AND ORDER

## I. BACKGROUND

In 1989 and 1991, petitioner was convicted of robbery, assault, and burglary charges and sentenced to consecutive terms of imprisonment. Resp't Exs. 101, 103 at 47. Petitioner was released on parole in 2005 and was incarcerated again in 2008 after he committed additional offenses. Resp't Ex. 134 at 65. In 2010, petitioner was released on parole.

On February 9, 2012, petitioner was involved in an automobile accident in Lincoln City, Oregon. Petitioner's probation officer began parole revocation proceedings after petitioner tested positive for controlled substances and a firearm was found in the vehicle. Resp't Ex. 134 at 61.

On April 16, 2012, a parole revocation hearing was held before a Hearings Officer. Resp't Ex. 134 at 125-205. Petitioner appeared and testified, along with Officer Eskridge, a police officer who responded to the accident. Evidence at the hearing established that petitioner had rented the vehicle involved in the accident and his belongings were found in the vehicle. Officer Eskridge testified that once he arrived at the scene, he began looking for the driver in an area south of the accident, which was the direction in which a witness saw the driver run. Officer Eskridge found petitioner approximately 150 yards from the accident, unresponsive and lying on the ground. Resp't Ex. 134 at 131, 133.

Officer Eskridge also testified that other responding officers informed him that a gun was found in the vehicle, and Officer Rudolph's police report – which included a photograph of the gun – corroborated Officer Eskridge's testimony. Resp't Ex. 103 at 107, 123; Resp't Ex. 134 at 137-38. Officer Rudolph's report also included the statements of Linda Moore, who lived near the accident scene. Ms. Moore reported that she saw the driver, who she believed to be a Caucasian male, get out of the vehicle after it crashed. Ms. Moore asked the driver if he was

okay, and he responded, "Yeah." When she asked if anyone else was in the vehicle, the driver responded, "No." Resp't Ex. 103 at 106.

The Hearings Officer found that petitioner had violated the conditions of his parole by using illegal substances, failing to obey all laws based on the circumstances of the accident, and possessing a dangerous weapon. Specifically, the Hearings Officer found:

> Mr. Ha claimed he was dropped off at his hotel and Sammy and Sam went to make a U-turn. The location of this hotel and its parking lot makes it unnecessary and impractical to perform a U turn as there is a clear way to return either north or southbound onto Hwy 101. Mr. Ha reported he could hear and see the crash from the hotel. However, the hotel is approximately .5 miles away from the crash scene with a hill and significant curve in between; making it impossible for anyone to see, much less detect a crash in the area the vehicle was found. Lastly, Mr. Ha stated cliffs were all around him and it was dark, yet he could see the car. This is highly unlikely given the darkness and closeness of homes and their landscaping. Lastly, the location Mr. Ha was found required him to run across a main street and head in the opposite direction of the vehicle. Furthermore, Mr. Ha previously admitted to his PPO he was in the vehicle at the time it crashed.
>
> It is clear that Mr. Ha's statements in this hearing are untruthful and therefore, will carry no weight in the finding of facts. In addition, Mr. Ha's failure to take reasonable stops to notify the owner of the damaged mailbox and to remain at the scene to leave his name and address, intentional or otherwise, gives substantial probable cause to Failing to Perform the Duties of a Driver.
>
> \*\*\*
>
> Mr. Ha entered into a rental agreement whereby he acknowledged the responsibility for the vehicle prior to leaving the rental company. The gun was found in the vehicle Mr. Ha possessed, occupied and was responsible for. This combined with the fact Mr. Ha has a history of gun possession giving probable cause to possession of a dangerous weapon-firearm.

Resp't. Ex. 134 at 69. The Hearings Officer acknowledged that petitioner's attorney raised the issue of hearsay, but she found that "Mr. Ha acknowledged drug use, medical records revealed illegal drugs in Mr. Ha's system and photos were taken at the scene of the crash showing the vehicle, the gun inside the vehicle." *Id.*

On May 30, 2012, the Board revoked petitioner's parole, finding that petitioner had violated the conditions of his supervision. Resp't Ex. 134 at 214. A future disposition hearing was scheduled to determine whether petitioner would be re-released on parole.

Petitioner sought administrative review of his parole revocation, and the Board denied relief. Resp't Ex. 134 at 218-20. Petitioner then sought judicial review of the parole revocation, arguing that the Board relied upon hearsay to revoke his parole in violation of his constitutional right to confrontation. Resp't Ex. 128. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Resp't Exs. 131-32.

On September 7, 2012, petitioner requested that the parole revocation hearing be reopened to present the testimony of Kayla Blower. According to petitioner, Blower would testify that she and a person named "Mr. Sam Johnson" were riding in petitioner's rental vehicle when the accident occurred, and she saw a firearm in Johnson's waistband. Resp't Ex. 103 at 145. The Board denied petitioner's request to reopen the hearing, explaining that "the information alleged to be in Ms. Blower's letter does not constitute substantial new information that was not known or could not be anticipated at the time of the hearing and that would significantly affect the outcome of the hearing." Resp't Ex. 104 at 18.

On September 18, 2012, the Board conducted a future disposition hearing. Resp't Ex. 103 at 162-208. At that hearing, petitioner claimed he was not in the vehicle during the accident and had loaned his vehicle to "Ms. Blower and a gentleman named Sam[.]" Resp't Ex. 103 at 178-79. By a vote of three members, the Board unanimously denied re-release and established a new release date of February 9, 2022, after ten years of incarceration. Resp't Ex. 103 at 206, 211. The Board subsequently withdrew its initial order and issued a new order with the vote of only two

Board members, because the third Board member had not signed her oath of office at the time of petitioner's future disposition hearing. Resp't Ex. 103 at 215.

Petitioner sought administrative review of the denial of his request to reopen the parole-revocation hearing and of the Board's future disposition order. The Board denied relief. Resp't Ex. 102 at 3-4; Resp't Ex. 103 at 223-24.

Petitioner then sought judicial review of the denial to reopen his revocation hearing, and the Board moved to dismiss on grounds that the order denying the request was not a "final order" of the Board. Resp't Exs. 102, 104-05. The Appellate Commissioner for the Oregon Court of Appeals granted the Board's motion to dismiss, and the Oregon Supreme Court denied review. Resp't Exs. 107, 110, 112-13.

Petitioner also sought judicial review of the future disposition order. Resp't Ex. 115. The Oregon Court of Appeals affirmed in a written opinion, and the Oregon Supreme Court denied review. Resp't Exs. 119, 121-22; *Ha v. Board of Parole and Post-Prison Supervision*, 282 Or. App. 227 (2016), *rev. denied*, 360 Or. 851 (2017).

Petitioner now seeks relief pursuant to 28 U.S.C. § 2254.

## II. DISCUSSION

In his supporting brief, petitioner presents argument in support of four claims: 1) the Board violated his rights to due process by relying on hearsay statements in revoking his parole; 2) the Board violated his rights to due process by denying petitioner's request to call a percipient witness at the parole revocation hearing; 3) the Oregon appellate courts violated petitioner's due process rights by declining to review the Board's refusal to reopen his revocation hearing; and 4)

the Oregon appellate courts violated petitioner's due process rights by precluding meaningful review of the Board's future disposition ruling. Pet'r Br. (ECF No. 41).[1]

   A. Parole Revocation Hearing

      1. Hearsay Statements

Petitioner maintains that hearsay statements of Officer Rudolph and witness Linda Moore were the only evidence that could support the findings that he was driving the vehicle and had possessed a gun. Petitioner argues that the Hearings Officer and the Board improperly relied on this evidence without finding "good cause" to deny petitioner the opportunity to confront and cross-examine Officer Rudolph and Linda Moore. Petitioner presented these claims to the Board and the Oregon appellate courts, and his claims were rejected.

A federal court may not grant a habeas petition regarding any claim "adjudicated on the merits" in state court, unless the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority, or if it reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams*, 529 U.S. at 407-08,

---

[1] In his federal petition, petitioner raised three additional claims for relief. Petitioner fails to sustain his burden to prove that habeas relief is warranted on the unargued claims. *See Mayes v. Premo*, 766 F.3d 949, 957 (9th Cir. 2014) (habeas petitioner bears the burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 637-38 (9th Cir. 2004) (same).

6  - OPINION AND ORDER

413; *see also Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam) (state court decisions that are not "contrary to" Supreme Court law may be set aside only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or are based on 'an unreasonable determination of the facts.'").

"A parolee's conditional liberty is entitled to due process protection under the Fifth and Fourteenth Amendments." *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 985 (9th Cir. 2002). Further, it is clearly established that minimum due process requirements for parole revocation hearings include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). At the same time, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Id.* at 480. Rather, "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489. In considering whether a violation of the right to confront adverse witnesses occurred by allowing hearsay testimony, the interest in confrontation must be balanced against the government's good cause for denying it. *Valdivia v. Schwarzenegger*, 599 F.3d 984, 989 (9th Cir. 2010) (citation omitted).

Petitioner maintains that allowing the hearsay statements of Officer Rudolph and Linda Moore to be presented violated his due process rights when the Hearings Officer did not find "good cause" to deny petitioner the right to confront them. I disagree.

No clearly establish federal law bars the presentation of hearsay at parole revocation hearings. Rather, "[o]n request of the parolee, [a] person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence,"

7 - OPINION AND ORDER

unless "the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed" or other good cause is given for "not allowing confrontation." *Morrissey*, 408 U.S. at 487, 489. Here, the Hearings Officer did not deny petitioner the right to question Officer Rudolph or Ms. Moore.

With respect to Officer Rudolph, petitioner did not request that he appear at the revocation hearing, and petitioner did not object to his absence. Further, petitioner made no objection when Officer Eskridge testified about the gun and how he learned it was discovered in petitioner's rental vehicle.[2] Resp't Ex. 134 at 137-39. Instead, when beginning his questioning of Officer Eskridge, counsel simply stated, "First of all, I want to reemphasize, a lot of the stuff that you testified to is considered hearsay." Resp't Ex. 134 at 150.

After counsel raised the issue of hearsay, the Hearings Officer gave petitioner the opportunity to question Officer Rudolph:

> I just want -- the officer just mentioned that if we want or if you want we can -- he can try to get Officer Rudolph on the phone for us. And then we can ask him -- if you want to ask him questions because you had pointed out the hearsay. So I'm giving you an opportunity to talk to him."

Resp't Ex. 134 at 165. Petitioner's counsel responded, "No, thank you," and "it's not necessary for me." *Id.* Accordingly, rather than "not allowing confrontation," the Hearings Officer provided an opportunity to cross-examine Officer Rudolph. *Morrisey*, 408 U.S. at 489.

With respect to Ms. Moore, petitioner maintains that he requested her presence at the hearing in a letter he personally wrote to the Hearings Officer. *See* Pet. Ex. 1 (ECF No. 41-1).

---

[2] Petitioner attempts to explain the failure to object by arguing that the Hearings Officer refused to allow objections and "cut him off" when counsel sought to raise an objection based on speculation. Pet'r Br. at 6. However, counsel's attempted speculation objection was made *after* Officer Eskridge testified about the gun being found in petitioner's rental car. Resp't Ex. 134 at 141. Regardless, the record is clear that petitioner did not demand to confront or question Officer Rudolph.

8   - OPINION AND ORDER

This letter is not included in the record, and it is questionable whether it was received by the Hearings Officer or the Board. Regardless, petitioner did not object to Ms. Moore's absence at the hearing. In the absence of an objection or demand to confront a witness, no clearly established federal law required the Hearings Officer to find "good cause" before allowing hearsay evidence to be included in the record. Moreover, Ms. Moore did not identify petitioner as the driver of the vehicle, and the Hearings Officer did not rely on her statements.

Accordingly, the Board and the Oregon appellate courts did not unreasonably apply clearly established federal law when rejecting this claim.

### 2. Failure to Call Witness

Petitioner next argues that the Hearings Officer and the Board violated his due process rights when they denied his request to call Ms. Moore as a witness at his revocation hearing. Respondent maintains that petitioner did not present this claim to the Oregon appellate courts, and it is unexhausted and barred from federal review by procedural default.

A state habeas petitioner must exhaust all available state court remedies before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To meet the exhaustion requirement, the petitioner must "fairly present" a federal claim to the State's highest court "in order to give the State the opportunity to pass upon and to correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (quotation marks omitted); *Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011) ("Exhaustion requires the petitioner to 'fairly present' his claims to the highest court of the state."). If a claim was not fairly presented to the state courts and no state remedies remain available for the petitioner to do so, the claim is barred from federal review through procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991);

9 - OPINION AND ORDER

*Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) ("A procedural default may be *caused* by a failure to exhaust federal claims in state court.").

As noted, it is questionable whether petitioner's letter was received by the Hearings Officer or the Board, and petitioner made no objection to Ms. Moore's absence at the revocation hearing. Further, he does not dispute that he failed to present this claim to the Oregon appellate courts. Because petitioner can no longer exhaust this claim, it is procedurally defaulted. *See* Or. Rev. Stat. § 144.335(4) (requiring petition for judicial review of Board order to be filed within sixty days).

Petitioner nonetheless argues that the procedural default should be excused "because appellate counsel was ineffective in failing to claim that parole revocation hearing counsel was ineffective in failing to object to the Board's failure to make Ms. Moore available to testify." Pet'r Br. at 12. Petitioner cites *Martinez v. Ryan*, 566 U.S. 1 (2012) in support of this argument; however, *Martinez* applies only to claims against trial counsel and does not apply to appellate counsel. *Davila v. Davis*, 137 S. Ct. 2058 (2017).

Accordingly, this claim is barred by procedural default.

B. Refusal to Reopen Revocation Hearing

Petitioner alleges that the Oregon Court of Appeals violated his due process rights by declining to review the Board's denial of his request to reopen the revocation hearing. Petitioner argues that in finding the Board's decision unreviewable, the Oregon Court of Appeals analyzed "in a surprising and unpredictable fashion what constitutes reconsideration of an issue decided in the earlier proceedings." Pet. at 10.

Respondent maintains that this claim was not fairly presented to the Oregon courts, because petitioner did not present a federal due process issue to the Oregon appellate courts.

10    - OPINION AND ORDER

Petitioner responds that he had no reason to raise a federal due process argument on appeal, because he could not have anticipated the surprising decision of the Oregon Court of Appeals and it would have been futile to present this claim to the Oregon Supreme Court. Petitioner fails to explain why he did not present a federal due process claim to the Oregon Supreme Court if he believed the Oregon Court of Appeals deprived him of due process in declining to review the Board's order.

Regardless, petitioner does not explain how the Oregon Court of Appeals' decision violated his due process rights, and petitioner fails to establish entitlement to habeas relief on this ground.

C. Review of Future Disposition Order

Finally, petitioner contends that the Board's disposition order found aggravating factors without "purport[ing] to draw any rational connection between those facts and its imposition of ten years reincarceration." Pet'r Br. at 16. Petitioner claims that the Oregon appellate courts denied petitioner "full and fair appellate review" in violation of his federal due process rights by affirming the Board's order "without first reviewing it to determine whether the Board's ultimate conclusion was supported by substantial reason." *Id.*

When seeking judicial review, petitioner argued that the Board's future-disposition order failed to "explain its reasoning for denying petitioner re-release for 120 months as opposed to some lesser, more specific, term." Resp't Ex. 117 at 25. However, petitioner relied exclusively on Oregon law and did not fairly present a federal due process claim to the Oregon appellate courts. Resp't Ex. 117 at 21-26.

Accordingly, this claim is unexhausted and barred from federal review through procedural default.

11 - OPINION AND ORDER

CONCLUSION

The Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED. A Certificate of Appealability is denied on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

Dated this 3rd day of December, 2019.

Ann Aiken
United States District Judge